## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                )
                                      )
**ANTHONY JOHN O'REILLY,**            )        **Case No. 18-24564-JAD**
                                      )
          **Debtor.**   )        **Chapter 15**
                                      )
_____  X    **Related to ECF No. 9**
                                      )
**ALASTAIR BEVERIDGE of**             )
**AlixPartners Services U.K., LLP,**  )
**as Foreign Representative,**        )
                                      )
          **Movant,**   )
                                      )
   - v -                 )
                                      )
**SABINA VIDUNAS,**                   )
                                      )
          **Respondent.**  )
_____  X

### MEMORANDUM OPINION

The matter before the Court is a *Motion for Recognition of Foreign Bankruptcy Proceeding Pursuant to Sections 1515 & 1517 of the US Bankr. Code* (the "Motion for Recognition") filed by Alastair Beverage of AlixPartners Services U.K., LLP, as Foreign Representative.

This matter is a core proceeding in which the Court has the requisite subject-matter jurisdiction and authority to enter a final judgment pursuant to 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), 157(b)(2)(P), 1334(a), and 1334(b).

An objection to the Motion for Recognition has been filed by Ms. Sabina Vidunas (the "Respondent" or "Ms. Vidunas"), who is an alleged creditor of Anthony John O'Reilly (the "Debtor" or "Mr. O'Reilly").  For the reasons set forth

below, the objection is overruled in part, and sustained in part. Specifically, while the Court overrules the objection insofar as Ms. Vidunas challenges the "collective" nature of the foreign proceeding at issue, the Court determines that the Foreign Representative has not met his burden of proving that the foreign proceeding is either a "main" proceeding or "nonmain" proceeding entitled to recognition under Chapter 15 of the Bankruptcy Code.

## I.
## Background

At present, this case is not terribly complicated. Mr. O'Reilly is the former chairman and chief executive officer of the H.J. Heinz Company. See Vidunas v. O'Reilly, No. 13-CV-1746, 2015 WL 5177762, at *2 (W.D. Pa. Sept. 4, 2015). In 1995, Ms. Vidunas was hired to be Mr. O'Reilly's personal nurse and assistant. Around 2010 or 2011, the employment or independent contractor relationship, whatever it may have been, ended. Thereafter, in 2013 Ms. Vidunas filed a diversity action against Mr. O'Reilly in the United States District Court for the Western District of Pennsylvania at Case No. 13-1746, asserting (by way of a *Second Amended Complaint*) a single cause of action sounding in breach of contract.

To date, the claim asserted in this federal lawsuit has not been liquidated; nor has it been reduced to judgment. In fact, after the commencement of this lawsuit, and in June of 2015, Mr. O'Reilly filed a bankruptcy proceeding in the Commonwealth of the Bahamas-Supreme Court, Commercial Division at Docket

No. 28-2015 (hereinafter, the "Bahamian Bankruptcy").

Within the Bahamian Bankruptcy, and on or about July 8, 2016, the Honorable Justice Ian Winder issued a Certificate of Appointment, appointing Alastair Beveridge of AlixPartners Services, U.K., LLP (the "Bahamian Trustee") as the Trustee of Mr. O'Reilly's Bahamian Bankruptcy.

Sometime after his appointment, the Bahamian Trustee was made aware of the litigation commenced by Ms. Vidunas against Mr. O'Reilly. Ms. Vidunas, or her counsel, was provided notice of the Bahamian Bankruptcy. But for reasons that have not been articulated or disclosed, Ms. Vidunas has been unwilling to participate as a creditor in the Bahamian Bankruptcy, has elected to not file a proof of claim or debt in the Bahamian Bankruptcy, and desires to proceed with her lawsuit against Mr. O'Reilly in the United States District Court for the Western District of Pennsylvania.

Consequently, the Bahamian Trustee commenced the instant case under Chapter 15 of the United States Bankruptcy Code (the "Bankruptcy Code") by filing a petition for foreign recognition on November 26, 2018. Not long after the filing of the petition, the Bahamian Trustee filed his Motion for Recognition.[1]

"Recognition" of a "foreign proceeding" under Chapter 15 of the Bankruptcy

---

[1] The Bankruptcy Code and Bankruptcy Rules do not set forth the manner or method in which parties-in-interest opposing recognition may have their objections heard. To ensure that due process is provided, this Court instructed the petitioner to file a formal motion seeking recognition, which was duly served upon Ms. Vidunas. After Ms. Vidunas lodged her objection, a hearing was held and supplemental briefing was ordered.

Code provides certain mandatory relief, and in some circumstances discretionary relief, from the bankruptcy court. The extent and scope of such relief depends upon whether the "foreign proceeding" is a foreign "main proceeding" or a foreign "nonmain proceeding" entitled to recognition.

By way of example, Section 1520 of the Bankruptcy Code provides that upon "recognition" of a foreign "main proceeding," the automatic stay of 11 U.S.C. § 362 applies with respect to both the debtor and property of the debtor that is within the territorial jurisdiction of the United States. See 11 U.S.C. § 1520(a)(1).

Section 1520 also provides additional relief upon recognition of a foreign main proceeding, including authorizing the "foreign representative" to operate the debtor's business and affording him or her with the powers of a bankruptcy trustee to the extent provided by 11 U.S.C. §§ 363 and 552. See 11 U.S.C. § 1520(a)(3). The preceding are just examples of relief, and Chapter 15 affords further relief to a foreign representative when a foreign main proceeding is recognized. See, e.g. 11 U.S.C. § 1520(a)(2)(applying 11 U.S.C. §§ 363, 549 and 552 to certain transfers).

Chapter 15 of the Bankruptcy Code also contains discretionary relief upon recognition of a foreign proceeding, regardless of whether it is determined to be a "main proceeding" or "nonmain proceeding."

Specifically, Section 1521 of the Bankruptcy Code states that "[u]pon recognition of a foreign proceeding, whether main or nonmain," the court may

-4-

grant "any appropriate relief" where "necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a).

The statute also contains specific items of "appropriate relief," most of which consist of various statutory stays or injunctions protecting the debtor or its assets, providing for the examination of witnesses, and other relief. Id. at §§ 1521(a)(1) - (a)(7) and 1521(b).

By the Motion for Recognition, the Bahamian Trustee asserts the status of a "foreign representative," asserts that the Bahamian Bankruptcy is a "foreign proceeding," and asserts that the Bahamian Bankruptcy is a "main proceeding" thereby triggering the protections of the automatic stay (and comity with respect to any discharge order entered by the Bahamian court).

Alternatively, the Bahamian Trustee asserts that the Bahamian Bankruptcy is a foreign "nonmain proceeding," and that this Court should exercise its discretion and impose the automatic stay against Ms. Vidunas and recognize any discharge order entered (or to be entered) in the Bahamian Bankruptcy.

Ms. Vidunas has objected to the relief requested in the Motion for Recognition. Specifically, while Ms. Vidunas does not contest the status of the Bahamian Trustee as a "foreign representative," Ms. Vidunas contends that the Bahamian Bankruptcy does not constitute a "foreign proceeding" as the term is defined in 11 U.S.C. § 101(23). As such, she contends that recognition of the

Bahamian Bankruptcy is not appropriate since the recognition provisions of Chapter 15 apply only to "foreign proceedings." See 11 U.S.C. § 1515(a).

Ms. Vidunas also argues, in the alternative, that if the Bahamian Bankruptcy is a "foreign proceeding," it is merely a "nonmain" proceeding and not a "main" proceeding. As Ms. Vidunas points out, this distinction is material because if the Bahamian Bankruptcy is a "nonmain" proceeding, the automatic stay of 11 U.S.C. § 362 is not triggered by the mere recognition of the foreign proceeding. Rather, according to Ms. Vidunas, the foreign representative is legally required to demonstrate why this Court should exercise its discretion and impose an injunction against Ms. Vidunas. In this regard, Ms. Vidunas has contended that the Bahamian Trustee has not set forth in his papers a claim for discretionary injunctive relief, let alone proven that such relief should be granted. Each of the objections of Ms. Vidunas are examined more fully below.

## II.
## The Bahamian Bankruptcy is a "Foreign Proceeding"

11 U.S.C. § 1515(a) plainly states that a foreign representative has standing to apply for recognition of a "foreign proceeding" under Chapter 15 of the Bankruptcy Code. 11 U.S.C. § 1517 further sets forth what the foreign representative must prove in order to have a "foreign proceeding" recognized by the United States Bankruptcy Court.

What is clear by these provisions is that a bankruptcy court may recognize only those insolvency matters that fall within the statutory definition of "foreign

proceeding" for purposes of Chapter 15 of the Bankruptcy Code.  If a foreign

insolvency case fails to qualify as a "foreign proceeding," no recognition is to be

given. In re Betcorp Ltd., 400 B.R. 266, 275 (Bankr. D. Nev. 2009).

The term "foreign proceeding" is defined in Section 101(23) of the

Bankruptcy Code, which states:

> The term "foreign proceeding" means a collective judicial
> or administrative proceeding in a foreign country,
> including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the
> assets and affairs of the debtor are subject to control or
> supervision by a foreign court, for the purpose of
> reorganization or liquidation.

11 U.S.C. § 101(23).  Given this definition, the concept of a "foreign proceeding"

can be broken down into seven components: (1) a proceeding, (2) that is either

judicial or administrative, (3) that is collective in nature, (4) that is in a foreign

country, (5) that is authorized or conducted under a law related to insolvency or

adjustment of debts, (6) in which the debtor's assets and affairs are subject to the

control or supervision of a foreign court, and (7) which proceeding is for the

purpose of reorganization or liquidation. See In re ABC Learning Ctrs. Ltd., 728

F.3d 301, 307-08 (3d Cir. 2013).

It appears that there is no dispute that six of the seven components of a

foreign proceeding are present in this case.  That is, the parties appear to agree

that the Bahamian Bankruptcy is a proceeding, that it is judicial or administrative

in nature, that the proceeding is pending in a foreign country, that the proceeding

is authorized or conducted under a law related to insolvency or adjustment of debts, that the proceeding is under the control or supervision of a foreign court, and that the Bahamian Bankruptcy is for the purpose of liquidating Mr. O'Reilly's assets for the benefit of creditors.

While six of the components are not disputed, a seventh component is contested by Ms. Vidunas. Specifically, Ms. Vidunas' objection focuses on the "collective in nature" requirement. The gist of her objection is that the Bahamian Bankruptcy is allegedly antiquated and different from the bankruptcy process in the United States. According to Ms. Vidunas, these differences should translate to a finding that the Bahamian Bankruptcy is not "collective in nature" and is therefore not a "foreign proceeding" subject to recognition under Chapter 15 of the Bankruptcy Code.

Ms. Vidunas also offers a laundry list of other reasons why the Bahamian Bankruptcy is not "collective" in nature. This list includes the following reasons, which are referred to herein as the "Participation Objections": (1) Ms. Vidunas allegedly has not been afforded notice and opportunity to participate in the Bahamian Bankruptcy, (2) Ms. Vidunas allegedly does not have a remedy in the Bahamas to challenge improper notice, (3) Ms. Vidunas is allegedly disenfranchised from participating in a trustee election in the Bahamian Bankruptcy because her claims against Mr. O'Reilly are unliquidated, (4) creditors are precluded from pursuing direct claims against Mr. O'Reilly or participating in

discovery as such powers are allegedly reposed solely in the Bahamian Trustee, and (5) there is little oversight regarding the Bahamian Trustee's determinations as to allowance of claims and elections to arbitrate (or not arbitrate) disputes.

The Participation Objections are germane to the matter *sub judice* because all creditors must receive notice and have the ability to protect and assert their rights in order for a foreign proceeding to be classified as "collective" in nature. In re ABC Learning Ctrs. Ltd., 445 B.R. 318, 328 (Bankr. D. Del. 2010), aff'd 728 F.3d 301 (3d Cir. 2013).  The gist of the Participation Objections is that Ms. Vidunas alleges that she has been deprived of a meaningful ability to participate and represent her interests in the Bahamian Bankruptcy and that there is very little judicial oversight of the Bahamian Trustee.

The Court has duly considered all of the objections interposed by Ms. Vidunas.  These objections are not convincing to the Court for a number of reasons which are set forth below.

**A.**
**The Fact that the Bahamian Bankruptcy Law is Different than the United States Bankruptcy Code is not a *Per Se* Bar to Recognition**

Assuming *arguendo* that bankruptcy in the United States is substantially different from bankruptcy relief in the Bahamas, it is this Court's opinion that the mere difference does not translate to a *per se* rule that the foreign bankruptcy cannot be a "foreign proceeding" subject to recognition under Chapter 15.  Nor does the fact that the foreign bankruptcy proceeding differs from a bankruptcy

case under the Bankruptcy Code automatically translate to a conclusion that the foreign bankruptcy is not a proceeding that is "collective in nature." The Court reaches these conclusions because nothing in the text of 11 U.S.C. § 101(23) requires that a "foreign proceeding" mirror a case under the Bankruptcy Code.

The focus of the "collective in nature" component of a "foreign proceeding" is not the substantive terms of the United States Bankruptcy Code. Rather, the answer to this question turns on whether the legal proceeding before the foreign tribunal considers the rights and obligations of all creditors. In re ABC Learning Ctrs. Ltd., 728 F.3d at 310; see also In re Betcorp, 400 B.R. at 281.

If this Court were to adopt Ms. Vidunas position that only foreign bankruptcies that mirror bankruptcy in the United States are entitled to recognition, such position would be contrary to the ultimate goal of Chapter 15 of the Bankruptcy Code–i.e., to promote cooperation between U.S. and foreign courts, to foster greater certainty for trade and investment, and to promote fair and efficient cross-border insolvency proceedings that protect the interests of all creditors and other interested entities. See In re Oi Brasil Holdings Cooperatief U.A., 578 B.R. 169, 193 (Bankr. S.D.N.Y. 2017), reconsideration denied, 582 B.R. 358 (Bankr. S.D.N.Y. 2018)(describing the purposes of Chapter 15 of the Bankruptcy Code).

This Court's rejection of the position of Ms. Vidunas is consistent with the fact that Chapter 15 is our country's adoption in 2005 of the Model Law on Cross-

Border Insolvency, which itself was promulgated in 1997 by the United Nations

Commission on International Trade Law ("UNCITRAL").

As Circuit Judge Anthony Scirica observed: "UNCITRAL developed the Model

Law on Transnational Insolvency in response to the challenges of multinational

bankruptcies where multiple insolvency regimes lacked effective mechanisms for

coordination. Multiple systems limited the ability of any one bankruptcy regime

to protect assets against dissipation, and allowed creditors to skip ahead of their

priority by seizing assets in foreign jurisdictions." In re ABC Learning Ctrs. Ltd.,

728 F.3d at 305.

To avoid an unpredictable piecemeal approach to international insolvency,

Chapter 15 creates ancillary proceedings in the United States that "provide

support to the foreign insolvency administrator." Id. at 305-06 (citing Jay

Lawrence Westbrook, Chapter 15 At Last, 79 Am. Bankr. L.J. 713, 726 (2005)).

"The goal is to direct creditors and assets to the foreign main proceeding for

orderly and fair distribution of assets, avoiding the seizure of assets by creditors

operating outside the jurisdiction of the foreign main proceeding." Id. In this

regard, Judge Scirica noted in ABC Learning Ctrs. that:

> The Model Law reflects a universalism approach to
> transnational insolvency. It treats the multinational bankruptcy as
> a single process in the foreign main proceeding with other courts
> assisting in that single proceeding. Westbrook, supra., at 715. In
> contrast under a territorialism approach a debtor must initiate
> insolvency actions in each country where its property is found. Id.
> This approach is the so-called "grab rule" where each country seizes
> assets and distributes them according to each country's insolvency

-11-

proceedings. Id.; see also Andrew T. Guzman, International
Bankruptcy: In Defense of Universalism, 98 Mich. L. Rev. 2177, 2179
(2000).

In re ABC Learning Ctrs., 728 F.3d at 306.

Thus, Chapter 15 "embraces the universalism approach." Id. It treats the
multinational bankruptcy as a single process with the foreign main proceeding.
Id. That is, when a foreign proceeding is recognized in Chapter 15, bankruptcy
courts in the United States act "in aid of the main proceeding". Id. (citing H.R.
Rep. No. 109-31(I), at 109 (2005) reprinted in 2005 U.S.C.C.A.N. 88, 171).

Stated in other terms, "a Chapter 15 court in the United States acts as an
adjunct or arm of a foreign bankruptcy court where the main proceedings are
conducted." Id. (quoting In re Fairfield Sentry, Ltd. Litig., 458 B.R. 665, 678-79
(S.D.N.Y. 2011)). Accordingly, the focus of the ancillary case under Chapter 15
is the coordination and enforcement of the foreign main proceeding to matters
within the United States, subject of course to the public policy exception embodied
in 11 U.S.C. § 1506, which states that "[n]othing in this chapter prevents the
court from refusing to take an action governed by this chapter if the action would
be manifestly contrary to the public policy of the United States."

The case of In re Spanish Cay Co., Ltd., 161 B.R. 715 (Bankr. S.D. Fla.
1993), which is a case which predates the enactment of Chapter 15, is instructive
as to this Court's conclusion that the differences between Bahamian bankruptcy
and bankruptcy in the United States does not operate as a *per se* bar to

-12-

recognition of the Bahamian Bankruptcy.

In <u>Spanish Cay</u>, the bankruptcy court was confronted with the question of whether it should abstain from exercising jurisdiction over an involuntary Chapter 11 bankruptcy case in favor of a Bahamian liquidation proceeding.  Arguments against abstention included the fact that there was no Chapter 11 counterpart under Bahamian law.  In the course of rejecting this basis for challenging the abstention request, the bankruptcy court held that:

> The fact that the Bahamian law does not contemplate or allow a reorganization process comparable to our Chapter 11 is no reason to deny abstention.  In determining whether to defer to a Bahamian liquidation, the issue is not whether a reorganization is possible under Bahamian law.  Rather, under 304(c), the Court must determine whether creditors will be justly treated and protected from prejudice.

<u>In re Spanish Cay Co., Ltd.</u>, 161 B.R. at 726.  The court in <u>Spanish Cay</u> further observed that:

> The liquidation laws of the Bahamas are in harmony with those of the United States.  <u>Matter of Culmer</u>, 25 B.R. 621 (Bankr. S.D.N.Y. 1982).  <u>Culmer</u> was a § 304 ancillary proceeding.  To determine whether the U.S. assets should be transferred to and liquidated in the Bahamas, the court had to apply the same 304(c) factors applicable to the Court's decision here.  Bankruptcy Judge Lifland thoroughly reviewed Bahamian liquidation laws and procedures and found that Bahamian liquidations comport with § 304(c) and the principle of equality of distribution.  The Court concluded that "the liquidation laws of the Bahamas are in harmony with those of the United States and must be afforded comity." 25 B.R. at 632.

In re Spanish Cay Co., Ltd., 161 B.R. at 726.

Like the court in Spanish Cay, this Court finds that the mere fact that the Bahamian bankruptcy statute is different vis-a-viz the United States Bankruptcy Code, does not mean that recognition of the Bahamian Bankruptcy is *per se* barred.

## B.
## The Participation Objections Are Not Convincing

A fair reading of the Participation Objections is that Ms. Vidunas claims that she was denied a meaningful opportunity to participate in the Bahamian Bankruptcy case, and that she has no meaningful remedies there to assert her claims.  A closer examination of her Participation Objections reveals that they are without merit.

Beginning with notice and an opportunity to participate, Ms. Vidunas claims that she was not provided with due process in the Bahamian Bankruptcy with respect to asserting her claims or otherwise participating at the meeting of creditors where the Bahamian Trustee was appointed.  The undisputed record, however, reflects that Ms. Vidunas was afforded notice and an opportunity to participate, but intentionally chose not to file a claim or otherwise appear at the first meeting of creditors.

In fact, Ms. Vidunas was repeatedly provided notice through her litigation counsel, and was invited over an approximate two year time period to file a claim in the Bahamian Bankruptcy. See *Exhibit B* to the *Response to Respondent Sabina*

-14-

*Vidunas' Objection*, ECF No. 13. But, for reasons that are unknown, Ms. Vidunas has not filed a claim in the Bahamian Bankruptcy despite having ample opportunity to do so.

As to the first meeting of creditors in the Bahamian Bankruptcy, notice to creditors was relatively brief. The record reflects that the notice was issued on May 13, 2016, and the meeting was scheduled for May 26, 2016. Id. The documents of record further reflect that Ms. Vidunas' litigation counsel received the notice of the meeting and, by May 17, 2016 at the latest, forwarded it to Ms. Vidunas. Id.

These documents also reflect that while the notice of the first meeting of creditors was tight, creditors were nonetheless invited to participate at the first meeting of creditors by telephone or video conference thereby minimizing any prejudice occasioned by the short notice and/or geographical distance occasioned by the proceedings. Id. Notwithstanding these facts, Ms. Vidunas chose to not participate remotely or otherwise seek an adjournment of the meeting. Instead, she sat idly by for a period of over two years and has done nothing to date in the Bahamian Bankruptcy.

A liberal construction of Ms. Vidunas' objection to the Motion for Recognition is that Ms. Vidunas would like this Court to infer that Ms. Vidunas was somehow precluded from seeking an adjournment of the first meeting of creditors due to allegedly antiquated process employed by the Bahamian court.

-15-

The Bahamian *Bankruptcy Act of 1870* (the "Bahamian Bankruptcy Act" or "Bankruptcy Act"),[2] however, contemplates that meetings of creditors may be adjourned. See Section 17 of the Bahamian Bankruptcy Act (providing that the debtor may be examined at the first meeting of creditors "and subject to such adjourned public examination as the court may direct"); see also Section 66 of the Bahamian Bankruptcy Act ("The Registrar may adjourn the first meeting of creditors from time to time and from place to place, subject to the directions of the court").

Section 64 of the Bankruptcy Act also states that "[n]o proceedings in the bankruptcy shall be invalidated by any formal defect or by any irregularity unless the court before which an objection is made to such proceedings is of the opinion that substantial injustice has been caused by such defect or irregularity, and that such injustice cannot be remedied by any order of such court."

Certainly these provisions of the Bahamian Bankruptcy Act afforded Ms. Vidunas with ample opportunity to seek an adjournment of the first meeting of creditors and an opportunity to have meaningful opportunity to participate in the same. But again, she did not avail herself of these remedies.

Ms. Vidunas also complains that she has been disenfranchised from the election of the Bahamian Trustee and/or "committee of inspection." The Court is puzzled by this objection because Ms. Vidunas admittedly holds an unliquidated

---

[2] A copy of the Bahamian Bankruptcy Act was filed at ECF No. 13, Ex. A.

claim and has no basis to vote in either election. Indeed, Section 14(3) of the Bahamian Bankruptcy Act states unequivocally that: "a creditor shall not vote at the said meeting in respect of any unliquidated or contingent debt, or any debt the value of which is not ascertained[.]" Parenthetically, this Court notes that this provision of the Bahamian Bankruptcy Act is consistent with Section 702(a)(1) of the Bankruptcy Code, which provides that only creditors who hold unsecured claims that are allowable, undisputed, fixed, and liquidated may vote for a trustee in bankruptcy. <u>See</u> 11 U.S.C. § 702(a)(1).[3]

Lastly, Ms. Vidunas also alleges that she does not have a remedy to challenge any act or inaction of the Bahamian Trustee that Ms. Vidunas may claim is improper. For example, by way of conjecture, she complains that she has no redress in instances where the Bahamian Trustee may refuse to allow or arbitrate her yet-to-be filed claim. She complains that she has no redress as to discovery of assets and liabilities of Mr. O'Reilly as only the Bahamian Trustee allegedly has discovery rights. Ms. Vidunas also contends that she has no appellate rights whatsoever.

These allegations of lack of remedies to Ms. Vidunas are perplexing to the Court because the Bahamian Bankruptcy Act affords Ms. Vidunas with multiple avenues to challenge the procedures utilized in the Bahamian Bankruptcy. The

---

[3] Section 29 of the Bahamian Bankruptcy Act provides for a process of estimating claims. Ms. Vidunas has not availed herself of this provision of the Bankruptcy Act.

Bahamian Bankruptcy Act also enables Ms. Vidunas with the ability to challenge the determinations made by the Bahamian Trustee or the Bahamian Supreme Court.

By way of example, Section 12(1) of the Bahamian Bankruptcy Act provides that a "committee of inspection" supervises the work of the Bahamian Trustee and that "unless the court, for some just cause, orders otherwise," the trustee must follow the directions of the committee of inspection. The plain language of this statute appears to afford Ms. Vidunas with the ability to petition the Bahamian court for relief if she disagrees with the instructions provided by the committee of inspection to the Bahamian Trustee or any response to the same made by the Bahamian Trustee.

Section 18 of the Bahamian Bankruptcy Act further provides that the Bahamian Trustee is accountable to both the creditors generally and the court. As to the former (the creditors), the statute provides that the trustee is accountable in that a resolution of the creditors overrides any direction given to the Bahamian Trustee by the committee of inspection. Section 18 further affords a dissenting or aggrieved creditor redress with respect to trustee actions or inactions, and states that "any creditor . . . or other person aggrieved by any act of the trustee may apply to the court, and the court may confirm, reverse or modify the act complained of, and make such order in the premises as it thinks just."

-18-

Section 59 of the Bahamian Bankruptcy Act provides the Bahamas Supreme Court (which is the trial court in the Bahamas) with the power "of doing complete justice." The Court is not aware of anything in the Bahamian Bankruptcy Act which would preclude Ms. Vidunas from petitioning the court for relief, to the extent such request is appropriate and just under the circumstances.

It is accurate in that Section 59 of the Bahamian Bankruptcy Act also states that "nor shall any appeal lie from its [the Supreme Court's] decisions, except in a manner directed by this Act." Presumably Ms. Vidunas relies on this provision to contend that she has no appellate rights. Her legal position is mistaken.

In their papers, the parties have not briefed the impact of the *Court of Appeal Act* on bankruptcy cases in the Bahamas under the Bankruptcy Act. The Bahamian *Court of Appeal Act* was initially enacted in 1964 (and later amended multiple times), well after the Bahamian Bankruptcy Act was adopted. Section 10 of the *Court of Appeal Act* provides that appeals may be taken to the Court of Appeal from interlocutory and final orders in civil cases. Section 11 of the *Court of Appeal Rules* states that the notice of appeal as to interlocutory orders should be filed within fourteen days of an interlocutory order. As to final orders, the time period to file the notice of appeal is six weeks.

In addressing the impact of the conflict between the appellate provisions of the *Court of Appeal Act* and Section 59 of the Bahamian Bankruptcy Act, the Privy Council in <u>Stubbs v. Gonzalez</u> noted that the first level appellate court in the

-19-

Bahamas–the Court of Appeal–did not come into existence until well after the Bahamian Bankruptcy Act was adopted. <u>Stubbs v. Gonzalez</u>, [2005] UKPC 22, (2005) 66 WIR 13, 2005 WL 1248440. The inference of the Privy Council is that with there being no Court of Appeal in 1870, this fact explains the "no appeal" provisions of Section 59 of the Bahamian Bankruptcy Act. The Privy Council also held that bankruptcy matters are "civil matters" falling within the ambit of the *Court of Appeal Act.* <u>Id</u>. The Privy Council therefore held that, notwithstanding Section 59 of the Bankruptcy Act, appeals can be taken from bankruptcy matters pursuant to the *Court of Appeal Act.* <u>Id</u>. The Privy Council also held that the Bahamas' Court of Appeal does have jurisdiction to hear any appeal from any order in bankruptcy proceedings. <u>Id</u>.[4]

Given the above, the contention that Ms. Vidunas is disenfranchised and has no avenue of redress before the Bahamian court system is without merit.[5]

---

[4] In essence, adverse decisions of the Supreme Court of the Bahamas are taken to the Court of Appeal. Judgments of the Court of Appeal may be appealed to the Privy Council. <u>See Organization of the Judicature of the Bahamas</u>, Court of Appeal of the Commonwealth of the Bahamas (March 19, 2019, 2:21 PM), http://www.courtofappeal.org.bs/organization.php.

[5] For these reasons, Ms. Vidunas objection based on the public policy exception found at 11 U.S.C. § 1506 is overruled. Given the extensive amount of judicial review afforded in both the Bahamian Bankruptcy Act and Court of Appeal Act, this Court can discern no exceptional circumstances warranting the invocation of the public policy exception. <u>See</u>, e.g., <u>In re ABC Learning Ctrs Ltd.</u>, 728 F.3d at 309 (where substantive and procedural due process is provided, application of the foreign insolvency act is not "manifestly" contrary to the public policy of the United States).

**C.**
### The Bahamian Bankruptcy is "Collective" in Nature

The Third Circuit Court of Appeals has noted that the "collective" proceeding requirement reflects U.S. policy "to provide an orderly liquidation procedure under which all creditors are treated equally." In re ABC Learning Ctrs. Ltd., 728 F.3d at 310 (quoting Schimmelpenninck v. Byrne (In re Schimmelpenninck), 183 F.3d 347, 351 (5th Cir. 1999)(which itself was quoting H.R.Rep. No. 95-595, 1st Sess., at 340 (1977)). The main test for collectivity is whether all creditors' interests are considered in the proceeding. Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.), 480 B.R. 129, 140 (S.D.N.Y. 2012).

United States District Court Judge Shira A. Scheindlin aptly described the standard for ascertaining whether a foreign insolvency case is a "collective proceeding" as follows:

> To be entitled to Chapter 15 recognition, petitioner must prove that the proceeding at issue was collective in nature. First and foremost, "[a] collective proceeding is one that considers the rights and obligations of all creditors"—that is for the general benefit of creditors.
>
> [T]he word 'collective' . . . contemplates both the consideration and eventual treatment of claims of various types of creditors, as well as the possibility that creditors may take part in the foreign action. . . . In determining whether a particular foreign action is collective . . . it is appropriate to consider both the law governing the foreign action and the parameters of the particular proceeding as defined in, for example, orders of a foreign tribunal overseeing the action.
>
> "A collective proceeding is designed to provide equitable

treatment to creditors, by treating similarly situated creditors in the same way, and to maximize the value of the debtor's assets for the benefit of all creditors. . . ." Indeed, among Chapter 15's objectives is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors." Further, UNCITRAL's Guide to Enactment "suggests that a foreign proceeding must contemplate the 'involvement of creditors collectively.' " However, to be for the general benefit of creditors, a proceeding need not ensure that all creditors receive a share of the distribution.

Other characteristics of a collective proceeding include: adequate notice to creditors under applicable foreign law, provisions for the distribution of assets according to statutory priorities, and a statutory mechanism for creditors to seek court review of the proceeding. However, the standard for notice is not a demanding one.

In re Ashapura Minechem Ltd., 480 B.R. at 136-37 (footnotes and citations omitted).

As to the notice issues and ability of creditors to seek redress, this aspect of "collectivity" has been discussed in Part II(B) of this Memorandum Opinion. The Court will therefore focus on whether the Bahamian Bankruptcy is for the benefit of creditors generally, as opposed to being a forum for relief for one specific creditor or small group of creditors.

A review of the Bankruptcy Act governing the Bahamian Bankruptcy leads to only one conclusion– that it is collective in nature for the benefit of all creditors.

Specifically, the statute permits creditors to petition for bankruptcy relief against a "bankrupt" who commits certain "acts of bankruptcy." See Section 4 of the Bankruptcy Act. The statute contains an automatic stay protecting the debtor and property of the debtor against "any debt provable in the bankruptcy." Id. at

Section 10.

The Bahamian statute affords creditors holding fixed and liquidated claims with the ability to elect bankruptcy trustees and a committee of inspection to oversee the liquidation of the bankruptcy estate. Id. at Sections 12 and 18. The Bankruptcy Act also provides that property of the "bankrupt" is "divisible among his creditors." Id. at Section 13.

The statute at issue compels the "bankrupt" to cooperate and to use "the utmost of his power" to "aid in the realisation [sic] of his property, and the distribution of the proceeds amongst his creditors." Id. at Section 17. The Bankruptcy Act also affords the trustee with the power to liquidate or otherwise dispose of valuable property for the benefit of creditors. Id. at Sections 20-28.

The Bahamian Bankruptcy Act provides for a process whereby creditor claims are filed and proven. Id. at Section 29. In this regard, the statute has provisions prioritizing claims and allowance of the same. Id. at Sections 29-36. The statute also has provisions for making dividend payments to creditors and a process for allowance of claims after payment of interim dividends. Id. at Sections 39-42.

The statute provides judicial aid to the trustee in locating and recovering property of the "bankrupt." Id. at Sections 76-79. The statute further provides for avoidance of fraudulent transfers and preferential transfers. Id. at Sections 71-72.

The Bankruptcy Act states that the bankruptcy case can be closed when

"the whole property of the bankrupt has been realised [sic] for the benefit of creditors" and a final report has been accepted by the court. Id. at Section 45.

Finally, the debtor may only receive a discharge upon application to the court, and, subject to just a few exceptions, upon showing that the creditors received a 50% dividend. Id. at Section 46.   As to debts excepted from discharge, the Bankruptcy Act provides that debts incurred by means of fraud or breach of trust are not dischargeable. Id. at Section 47.

As can be seen from these multiple provisions, the Bahamian Bankruptcy Act undoubtedly is collective in nature.  Indeed, it contains a number of provisions that are similar to the United States Bankruptcy Code.

In reaching this conclusion, this Court is mindful of the opinion of the Second Circuit Court of Appeals in The Bank of New York et al. v. Treco et al. (In re Treco), 240 F.3d 148, 159-60 (2d Cir. 2001), which was also cited by the Third Circuit Court of Appeals in In re ABC Learning Ctrs. Ltd., 728 F.3d at 310.

In Treco, the Second Circuit Court of Appeals refused to afford comity to a Bahamian liquidation proceeding because the Bahamian liquidation proceeding prioritized administrative expenses over the claims of secured creditors (and, as a result, treated secured creditors unfairly).  Treco, however, is distinguishable to the case at hand.  Upon closer inspection of the facts of Treco, it appears that the statute which caused the court concern in that case does not apply in the instant matter.  That is, the Bahamian proceeding in Treco was a proceeding under the

*Bahamian Companies Act of 1992.* Mr. O'Reilly's bankruptcy liquidation is a case

under the Bahamas *Bankruptcy Act of 1870*, and this statute does not have the

provision that was criticized in <u>Treco</u>. For this reason, <u>Treco</u> has no application

herein and does not affect this Court's conclusion that the Bahamian Bankruptcy

is "collective" in nature.

### III.
### Insufficient Pleading and/or Proof that the
### Foreign Proceeding is a "Main" and "Nonmain" Proceeding

Section 1517(a) of the United States Bankruptcy Code sets forth what a

petitioner must show before an order for recognition can be entered. Specifically,

this statute states, in pertinent part, that an order recognizing a foreign

proceeding shall be entered if:

> (1) such foreign proceeding for which recognition is sought is
> a foreign main proceeding or foreign nonmain proceeding
> within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a
> person or body; and
>
> (3) the petition meets the requirements of section 1515 [which
> sets forth what must accompany a petition for recognition].

11 U.S.C. § 1517(a).

It is uncontested that the latter two of the three requirements are present.

What is disputed is whether the Bahamian Bankruptcy is a foreign "main"

proceeding or a foreign "nonmain" proceeding. If the foreign proceeding is neither

a "main" or "nonmain" proceeding, then recognition cannot be provided. If the

proceeding is either a "main" or "nonmain" proceeding, such a determination can affect whether automatic relief may be entered by this Court without further litigation by the Bahamian Trustee.  As set forth above, the classification of a matter as a "main" proceeding triggers relief that is automatic.  Classification of a matter as a "nonmain" proceeding does not translate to automatic relief.  Rather, such relief is discretionary upon proper application and cause shown.

### A.
### The Time Period to Determine Whether the Proceeding is "Main" or "Nonmain" is the Date the Chapter 15 Petition is Filed

Hesoid was a Greek poet, philosopher, and economist.  Generally thought by scholars to have been active around the 8th Century B.C., which is near the time the legendary author Homer wrote the *Illiad* and the *Oddessy*, Hesoid is credited with coining the phrase: "Observe due measure, for right timing is in all things the most important factor."  See Alexander Loney and Stephen Scully, The Oxford Handbook of Hesoid 492 (Oxford University Press, 2018).

The quote from Hesoid is apropos to the controversy regarding whether the Bahamian Bankruptcy of Mr. O'Reilly constitutes a "main" or "nonmain" proceeding.  The Court makes this observation because Mr. O'Reilly has moved his residence since the commencement of the Bahamian Bankruptcy.  His relocation may be outcome determinative depending upon the lens of time through which the Court must look to determine whether a proceeding is "main" or "nonmain."

Ms. Vidunas argues that the relevant period of time is the date in which the Chapter 15 petition was filed.  Conversely, the Bahamian Trustee argues that the relevant period of time is when the Bahamian Bankruptcy was commenced.

The starting point for this Court's analysis is the statutory text.  After all, the United States Supreme Court has held: "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Comm. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)(citations and quotation marks omitted); see also United States v. Ron Pair Enters., Inc., 489 U.S. 235, 238, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)(statutory analysis is complete of the language is clear and does not lead to an absurd result).

Section 1517 of the United States Bankruptcy Code provides that a "foreign proceeding shall be recognized . . . as a foreign main proceeding if it ***is pending*** in the country where the debtor ***has*** the center of its main interests." 11 U.S.C. § 1517(b)(1)(emphasis added).[6]  Section 1517 of the Bankruptcy Code also provides that an order may be entered recognizing a foreign "nonmain" proceeding if " the debtor ***has*** an establishment ... where the proceeding ***is pending***." Id. at

---

[6] Sections 1502 and 1517 of the Bankruptcy Code discuss where the debtor has its "center of its main interests." 11 U.S.C. §§ 1502(4) and 1517(b)(1).  The case-law discussing the phrase "center of its main interests" frequently utilizes the acronym "COMI" for this phrase. See, e.g., Lavie v. Ran (In re Ran), 607 F.3d 1017, 1022 (5th Cir. 2010)("The phrase 'center of main interest' ('COMI') is a term of art which the Bankruptcy Code does not define explicitly.").

§1517(b)(2)(emphasis added).

The italicized terms in these statutes are present tense verbs.[7] This syntax

is important because courts have "looked to Congress' choice of verb tense to

ascertain a statute's temporal reach." Morning Mist Holdings Ltd. v. Krys (In re

Fairfield Sentry Ltd.), 714 F.3d 127, 134 (2d Cir. 2013)(quoting Carr v. United

States, 560 U.S. 438, 130 S.Ct. 2229, 2236, 176 L.Ed.2d 1152 (2010); citing

Dobrova v. Holder, 607 F.3d 297, 301 (2d Cir. 2010)).

The Second Circuit Court of Appeals in Fairfield Sentry discussed the

importance of verb tense in analyzing the temporal reach of bankruptcy statutes

generally, and Section 1517(b) of the Bankruptcy Code specifically.

As a general proposition, the Second Circuit in Fairfield Sentry found the

case of Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610 (2d

Cir. 1999) to be persuasive.  The  Second Circuit wrote:

> In In re AroChem Corp., we were guided by the tense
> used in a provision of the Bankruptcy Code allowing
> bankruptcy trustee's to hire professionals (*e.g.*, lawyers,
> accountants), as long as the professionals "*do not hold or
> represent* an interest adverse to the estate." In re
> AroChem Corp., 176 F.2d [at 623](quoting 11 U.S.C. §
> 327(a)(emphasis added). The present tense signified that
> an estate's counsel would not be disqualified based on
> past or future representations. Id.

Fairfield Sentry, 714 F.3d at 134.

---

[7] The Court notes that the words "pending" and "has" are also included in the definitions
of "foreign main proceeding" and "foreign nonmain proceeding" at 11 U.S.C. §§ 1502(4) and
1502(5).

Finding that the verb tense in Section 1517(b) of the Bankruptcy Code to be

similarly important, the Second Circuit in <u>Fairfield Sentry</u> concluded:

> It therefore matters that the inquiry under Section 1517
> is whether a foreign proceeding "*is pending* in the
> country where the debtor *has* the center of its main
> interests." 11 U.S.C. § 1517(b)(1)(emphasis added).  In
> this light, we reject Morning Mist's invitation for us to
> consider the debtor's entire operational history.
> Likewise, a [center of main interests] determination
> based on the date of the *initiation* of the foreign
> proceeding is not compelled by the statute.  A foreign
> proceeding "*is pending,*" 11 U.S.C. § 1517(b)(1) (emphasis
> added), only after it has been commenced.  Under the
> text of the statute, therefore, the filing date of the
> Chapter 15 petition should serve to anchor the [center of
> main interests] analysis.

<u>Fairfield Sentry</u>, 714 F.3d at 134.

The Second Circuit is not the only circuit court to examine the verb tense

contained in Section 1517 of the Bankruptcy Code and conclude that the relevant

period of time for ascertaining whether a proceeding is a "main" or "nonmain" is

the date the Chapter 15 petition is filed.  Specifically, the Fifth Circuit Court of

Appeals in <u>In re Ran</u>, 607 F.3d 1017 (5th Cir. 2010) undertook the same analysis

and reached the same result.  In <u>Ran</u>, the Fifth Circuit held:

> Every operative verb is written in the present or present
> progressive tense. . . . Congress's choice to use the
> present tense requires courts to view the [center of main
> interests] determination in the present, *i.e.*, at the time
> the petition for recognition was filed.  If Congress had, in
> fact, intended bankruptcy courts to view the [center of
> main interests] determination through a look-back
> period or on a specific past date, it could have easily
> done so.  This is particularly significant because

> Congress is clearly capable of creating lookback periods
> in the Bankruptcy Code. See e.g., [11 U.S.C. §]
> 522(b)(3)(A)(creating a lookback provision for property
> exemptions).

Ran, 607 F.3d at 1025; see also id. at 1027 (applying the same analysis for

determining whether the debtor has an "establishment" for purposes of

determining whether the proceeding is a "nonmain" foreign proceeding).

The Fifth Circuit in Ran further opined that conducting a "center of main

interests" analysis (or "establishment" analysis) from the date of the Chapter 15

petition for recognition does not lead to absurd results or results not contemplated

by Congress. As Circuit Judge Carl E. Stewart wrote:

> Moreover, examining a debtor's [center of main
> interests or its establishment] at the time of the petition
> is filed fulfills Congress' purpose for implementing
> Chapter 15. . . . Chapter 15 was implemented by
> Congress in an attempt to harmonize transnational
> insolvency proceedings. If we were to assess [the
> debtor's center of main interests or establishment] by
> focusing upon Ran's operational history [predating the
> Chapter 15 petition], there would be an increased
> likelihood of conflicting [center of main interests or
> establishment] determinations, as courts may tend to
> attach greater importance to activities in their own
> countries, or may simply weigh evidence differently
> which may lead to the possibility of competing main
> proceedings, thus defeating the purpose of using the
> [center of main interests or establishments] construct.
> See In re Betcorp Ltd., 400 B.R. at 290. In fact, a
> meandering and never-ending inquiry into the debtor's
> past interests could lead to a denial of recognition in a
> country where a debtor's interests are truly centered,
> merely because he conducted past activities in a country
> at some point well before the petition for recognition was
> sought. See Jay Lawrence Westbrook, Locating the Eye

-30-

of the Financial Storm, 32 Brook. J. Int'l L. 1019, 1020
(2007).

Ran, 607 F.3d at 1025.

Other reasons too have been cited in support of concluding that the date
of the filing of the Chapter 15 petition is the presumptive[8] temporal lens for
ascertaining whether recognition is permissible.  One such reason is that utilizing
the Chapter 15 petition date creates a criteria that is both objective and
ascertainable by third parties. See e.g., In re Fairfield Sentry, Ltd., 714 F.3d at
136-37; In re Ran, 607 F.3d at 1025-26.

This Court would add another prudential reason for the presumption that
the Chapter 15 petition date is the moment in time where the debtor's eligibility
for recognition is determined for purposes of Chapter 15 of the Bankruptcy Code.
That prudential reason is encouragement of swift prosecution and/or resolution
of cross-border insolvency cases.  This Court makes this prudential point because
circumstances involving a debtor (whether in a reorganization case or liquidation
case) change.  Having a presumption that utilizes the Chapter 15 petition date as
the focal point for determining whether recognition should be granted encourages

---

[8] For purposes of clarity, this Court is following the Second Circuit and Fifth Circuit, and
holds that the rebuttable presumption is that the Chapter 15 petition date is the period of time
court's look to ascertain the debtor's establishment and/or center of main interests.  As held by
the Second Circuit in Fairfield Sentry, the presumptive date can be rebutted in instances where
the debtor has manipulated its center of main interests or establishment in bad faith between the
time period between the commencement of the foreign insolvency proceeding and the filing of
the Chapter 15 petition. In re Fairfield Sentry Ltd., 714 F.3d at 137.  In the matter sub judice, no
party has suggested that Mr. O'Reilly has in bad faith manipulated his center of main interests.

litigants to act sooner, as opposed to later.   Prompt action thereby avoids the

"Never Never Land" problem which can be occasioned by the shifting sands of

where a debtor's domicile, principal place of business, and/or assets and liabilities

are primarily located in the ensuing years subsequent to the commencement of

a foreign insolvency proceeding.[9]

For all of these reasons, this Court finds the opinions of the Second Circuit

in Fairfield Sentry and Fifth Circuit in Ran to be convincing and concludes that

the presumptive date from which the Court is to ascertain the debtor's center of

main interests and/or establishment is the date the Chapter 15 petition was filed

with this Court.[10]

---

[9] The civil action involving Ms. Vidunas is illustrative of this very point.  Her lawsuit
was filed against Mr. O'Reilly in 2013.  Two years later, in 2015, his Bahamian Bankruptcy was
filed, and then on July 8, 2016 the Bahamian Trustee was appointed.  Despite the fact that the
Bahamian Bankruptcy Act contains a statutory injunction with respect to collection proceedings,
and despite the fact that Ms. Vidunas ignored all requests to participate in the Bahamian
Bankruptcy, the instant Chapter 15 petition was filed more than two years after the Bahamian
Trustee was appointed.

[10] A few courts have taken a different approach.  One court was the Southern District of
New York in In re Millennium Glob. Emerging Credit Master Fund Ltd., 474 B.R. 88, 92
(S.D.N.Y. 2012), where the court held that the center of main interests determination should be
made "as of the date of the commencement of the foreign proceeding."  The holding of the
Millennium court was effectively overruled by the Second Circuit in Fairfield Sentry, supra.
Another court, the United States Bankruptcy Court for the Southern District of Florida in In re
British Am. Ins. Co. Ltd., 425 B.R. 884, 910 (Bankr. S.D. Fla. 2010), held that the center of main
interests determination is made after the date when the Chapter 15 proceeding is commenced
(i.e., when the hearing on recognition occurs).  One rationale cited for this viewpoint also
supports having the determination made as of the date the Chapter 15 proceeding is filed.  That
rationale is:

Selecting the latest possible date for the COMI analysis is

(continued...)

**B.**
**Foreign Main-COMI Analysis**

The fairly recent case of <u>In re Pirogova</u>, 593 B.R. 402 (Bankr. S.D.N.Y. 2018)

succinctly described the analysis regarding recognition of a "foreign main

proceeding." In <u>Pirogova</u>, United States Bankruptcy Judge Shelley C. Chapman

wrote, in pertinent part, as follows:

> Pursuant to section 1502(4) of the Bankruptcy
> Code, a "'foreign main proceeding' means a foreign
> proceeding pending in the country where the debtor has
> the center of its main interests." 11 U.S.C. § 1502(4).
> The location of the debtor's [center of main interests] is
> the sole criterion for qualifying as a foreign main
> proceeding. <u>See</u> [<u>In re Bear Stearns High-Grade
> Structured Credit Strategies Master Fund Ltd.</u>, 389 B.R.
> 325, 331-32 (S.D.N.Y. 2008]. . . .
>
> Section 1516(c) of the Bankruptcy Code provides
> that, "[i]n the absence of evidence to the contrary, the
> debtor's registered office, or habitual residence in the
> case of an individual, is presumed to be the center of the
> debtor's main interests." 11 U.S.C. § 1516(c). . . .  The
> Code does not define "habitual residence," but courts
> have commonly acknowledged that habitual residence is

---

[10](...continued)
> consistent with the aim of international uniformity stressed in <u>Ran</u>
> and <u>Betcorp</u>.  Over time, the circumstances affecting recognition
> may change. . . . If all recognition proceedings, wherever pending,
> consider the latest available evidence, there is a greater likelihood
> that appropriate foreign main and foreign nonmain proceedings
> will be recognized as such in a consistent manner.

<u>Id</u>.  It is also worth noting that, practically speaking, the timing advocated by the bankruptcy
court in <u>British Am. Ins. Co.</u> is not much different than the timing period adopted by this Court
herein and the circuit courts in <u>Ran</u> and <u>Fairfield Sentry</u>.  The Court makes this observation
because the Bankruptcy Code requires that a "petition for recognition . . . shall be decided upon
at the earliest possible time." <u>See</u> 11 U.S.C. § 1517(c).

virtually identical to the concept of domicile, which is established by one's "physical presence in a location coupled with an intent to remain there indefinitely." [In re Ran, 607 F.3d at 1022](citing Texas v. Florida, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1930); accord In re Kemsley, 489 B.R. 346, 353 (Bankr. S.D.N.Y. 2013). . . Where evidence is presented to the contrary, courts . . . cannot rely solely upon the presumption regarding a debtor's habitual residence, but rather they must consider all of the relevant evidence. [In re Millennium Glob. Emerging Credit Master Fund. Ltd., 474 B.R. at 92]. . . .

In analyzing an individual's habitual residence, courts consider "(1) the length of time spent in the location; (2) the occupational of familial ties to the area; and (3) the location of the individual's regular activities, jobs, assets, investments, clubs, unions, and institutions of which he is a member." In re Ran, 607 F.3d at 1022-23 (citations omitted).    Courts may also consider additional factors such as (i) the location of the debtor's primary assets; (ii) the location of the majority of the debtor's creditors; and (iii) the jurisdiction whose law would apply to most disputes. Id. at 1024 (citing In re Loy, 380 B.R. 154, 162 (Bankr. E.D. Va. 2007); see also [In re Kemsley, 489 B.R. 346, 360 (Bankr. S.D.N.Y. 2013)].    "The weight to be given to any one of these factors will likely vary depending upon the relative importance of the factors to the debtor and the debtor's personal circumstances." In re Kemsley, 489 B.R. at 360-61.

In re Pirogova, 593 B.R. at 408-09.

Upon due consideration of this standard, this Court concludes that Mr. O'Reilly's center of main interests does not lie in the Bahamas.  Rather, it lies in the country of France.  Support for this conclusion is the undisputed record before this Court.

As stated above, the Debtor's "habitual residence" is presumed to be the Debtor's center of main interests. Virtually identical to the concept of "domicile," an individual's "habitual residence" is established by physical presence coupled with an intent to remain there indefinitely.

The record reflects that Mr. O'Reilly (who is a senior citizen in his 80's) has been residing in France for a couple of years since his home in the Bahamas was liquidated. He therefore had no physical presence in the Bahamas when the Chapter 15 petition was filed.

Moreover, no evidence has been offered or presented in this case which would indicate that Mr. O'Reilly has any present intention to return and otherwise reside in the Bahamas. In fact, the undisputed record in this case reflects that the Chapter 15 petition filed by the Bahamian Trustee acknowledged that Mr. O'Reilly's habitual residence is located in France. See ECF No. 1.

It is true that certain of his assets have been liquidated by the Bahamian Trustee. However, it is this Court's view that this fact alone does not overcome the conclusion that Mr. O'Reilly is no longer domiciled in the Bahamas.

In this Chapter 15 proceeding, the Bahamian Trustee has not offered any evidence in the form of familial ties or further occupational ties of Mr. O'Reilly to the Bahamas from which this Court could infer that Mr. O'Reilly has an intent to return to the Bahamas. Rather, the undisputed record is that not only does Mr. O'Reilly reside with his wife in France, but it has also been suggested that Mr.

O'Reilly's health situation is such that he is not able to travel. See e.g., ECF No. 13,

Ex. B at pp. 57-65. These undisputed objective facts support a finding that Mr.

O'Reilly's center of main interests is actually located in France and not the

Bahamas. In re Kemsley, 489 B.R. 346, 360-63 (Bankr. S.D.N.Y. 2013)(observable

objective criteria supported a finding that the debtor's center of main interests or

habitual residence is where debtor had familial ties and where children went to

school).[11]

For all of these reasons, the Court concludes that the Bahamas is not Mr.

O'Reilly's center of main interests and the Bahamian Bankruptcy is not a foreign

---

[11] Kemsley predated the Second Circuit's opinion in Fairfield Sentry, and therefore the timing analysis utilized in Kemsley is no longer good law in the Second Circuit. One commentator has suggested that the timing advocated by Kemsley is consistent with the Model Law on Cross-Border Insolvency. See Cody Vandewerker, The Jetsetter's Guide to Bankruptcy: Chapter 15 and Recognition as a Foreign Main Proceeding for Individual Debtors, 33 Ariz.J.Int'l & Comp.L. 452 (2016). The Model Law's recommendation for timing is:

> With respect to the date at which the centre of main interests of the debtor should be determined, having regard to the evidence required to accompany an application for recognition under article 15 and the relevance accorded the decision commencing the foreign proceeding and appointing the foreign representative, the date of commencement of that proceeding shall be the appropriate time.

Id. at 466 (citing UNCITRAL at ¶ 159). The Model Law also states, however, that "a State may modify or leave out some of its provisions." See UNCITRAL at Part 2, ¶ 12; see also Drawbridge Spec. Op. Fund L.P. v. Barnet et al. (In re Barnet), 737 F.3d 238, 251 (2d Cir. 2013). The United States Congress left out the above cited timing recommendation when the Congress adopted Chapter 15 in 2005. Nothing empowers this Court to insert the omitted recommendation by re-writing the statute. Cf. Bedroc Ltd. v. U.S., 541 U.S. 176, 183 (2004)("[t]he preeminent canon of statutory interpretation requires us to 'presume that the legislature says in a statute what it means and means in a statute what it says there.'")(internal brackets omitted)(quoting Comm. Nat'l Bank v. Germain, 503 U.S. at 253-54).

"main proceeding."

## C.
## Foreign Nonmain-Establishment Analysis

Section 1517(b) of the Bankruptcy Code provides that this Court may recognize a foreign proceeding if it is a "nonmain proceeding." 11 U.S.C. §§ 1502(7) and 1517(a)(1).  Under the Bankruptcy Code, a foreign "nonmain proceeding" means a proceeding, other than a foreign main proceeding, where the debtor has "an establishment." Id. at § 1502(5).

The Court would note that it is the burden of the party seeking recognition of a foreign nonmain proceeding to prove, by the preponderance of the evidence, that the debtor has an "establishment" in the jurisdiction where the foreign insolvency proceeding is pending. See In re Millennium Glob. Emerging Credit Master Fund Ltd., 474 B.R. at 91; see also In re Fairfield Sentry Ltd., No. 10 Civ. 7311 (GBD), 2011 WL 4357421, at *3-4 (S.D.N.Y. Sept. 15, 2011).

An "establishment," in turn, is defined as "any place of operations where the debtor carries out a nontransitory economic activity." Id. at § 1502(2).  While the Bankruptcy Code does not define the phrases "place of operations" and "nontransitory economic activity," emerging case law provides guidance for the Court with respect to these terms.

For example, the bankruptcy court in In re Creative Fin. Ltd., 543 B.R. 498 (Bankr. S.D.N.Y. 2016) held that "the terms 'operations' and 'economic activity' require a showing of a local effect on the marketplace, more than mere

-37-

incorporation and record-keeping and more than just the maintenance of property." In re Creative Fin. Ltd., 543 B.R. at 520.

In In re Ran, which is discussed extensively above, the Fifth Circuit examined the legislative history of Chapter 15 and determined in the context of an individual debtor that "a place of business [or operations] could conceivably align with the debtor having a secondary residence or possibly a place of employment in the country where the receiver claims that he has an establishment." In re Ran, 607 F.3d at 1027.

The bankruptcy court in Pirogova observed that the "mere presence of an asset in a given location, by itself, however, is insufficient to constitute a place of operations; to have a place of operations, the proposed debtor must engage in some economic activity in such location as of the petition date, whether the said activities are commercial, industrial or professional." In re Pirogova, 593 B.R. at 415 (citing In re Ran, 607 F.3d at 1027).

Finally, the courts in both Ran and Pirogova noted that the existence of a pending insolvency proceeding alone failed to meet the statutory requirement of an establishment (i.e., the legal proceeding itself is not a "place of operations" or "nontransitory economic activity" as contemplated by the statute). In re Ran, 607 F.3d at 1028; In re Pirogova, 593 B.R. at 418; see also In re British American Ins. Co. Ltd., 425 B.R. at 915-916 (adopting Lavie v. Ran, 406 B.R. 277, 286-87 (S.D. Tex. 2009)).

-38-

Application of the statute and emerging case law to the case at bar reveals that the Bahamian Trustee has not met his burden of production, let alone burden of persuasion in this matter. Specifically, the Motion for Recognition does not plead sufficient facts to support a finding that the Bahamian Bankruptcy is a "nonmain" proceeding and neither do the submissions to date support such a conclusion.

For example, the Motion for Recognition merely alleges that the affairs of Mr. O'Reilly are being liquidated in the Bahamas without even a skeletal description of any commercial, industrial, or professional activities of Mr. O'Reilly in that jurisdiction as of the commencement of this Chapter 15 proceeding. Certainly more is required from both a pleading perspective and proof perspective before this Court can recognize the Bahamian Bankruptcy as a foreign "nonmain" proceeding.

Given this shortcoming, the Court can either deny the Motion for Recognition with prejudice or deny it without prejudice. The Court chooses the latter (i.e., it elects to deny the motion without prejudice and afford the movant the opportunity to file an amended Motion for Recognition). See Fed.R.Civ.P. 15(a)(2), as adopted into these proceedings by operation of Fed.R.Bankr.P. 7015 and 9014;[12] cf., LabMD, Inc. v. Tiversa Holding Corp., Civ. No. 2:15-cv-92, 2016

---

[12] Fed.R.Bankr.P. 9014 deals with "contested matters" and sets forth various rules in Part VII of the Bankruptcy Rules that apply to contested matters. Bankruptcy Rule 7015 is not

(continued...)

-39-

WL 11269774 (W.D. Pa. Jan. 8, 2016)(dismissing case in different context, but electing dismissal without prejudice with right to amend or replead).  The Court exercises its discretion in this regard because Ms. Vidunas appears to concede that the Bahamian Bankruptcy is a "nonmain" proceeding.  In addition, the litigants have attached to their papers a "Statement of Affairs" located at ECF No. 13-2, Ex. B, at 43-51.  Maybe this document is a summary of "nontransitory economic activity" of Mr. O'Reilly in the Bahamas.  Maybe it is not.  The fact is that the record is not robust and fully developed at this time, and the Court reserves its judgment with respect to the same.

## IV.
## Conclusion

Recognition of a foreign proceeding is by no means a "rubber stamp exercise." In re Creative Fin. Ltd., 543 B.R. at 516.[13]  The record to date reflects that while the Bahamian Trustee has established that the Bahamian Bankruptcy is a "foreign proceeding" that is "collective" in nature, the undisputed facts reflect

---

[12](...continued)
expressly identified in Fed.R.Bankr.P. 9014.  Bankruptcy Rule 9014, however, permits this Court to "direct otherwise" and implement the other established bankruptcy rules into the process where appropriate. See Fed.R.Bankr.P. 9014(c).

[13] A fair reading of Ms. Vidunas objection to the Motion for Recognition is that Ms. Vidunas concedes that the Bahamian Bankruptcy is a "nonmain" proceeding.  However, as set forth above, recognition is not a "rubber stamp" exercise.  Rather, the Court is to conduct an independent analysis as to whether the elements of recognition have been met. See In re Creative Fin. Ltd., 543 B.R. at 516; see also Somerset Trust Co. v. Mostoller (In re Somerset Regional Water Resources, LLC), 592 B.R. 38, 50-52 (Bankr. W.D. Pa. 2018)(court is not bound by stipulations of law and may make its own independent findings).

that Mr. O'Reilly's "center of main interests" does not lie in the Bahamas. As a result, the foreign proceeding *sub judice* cannot be recognized as a foreign "main" proceeding.

In addition, the allegations contained in the Motion for Recognition do not support a finding that the "foreign proceeding" *sub judice* is a "nonmain" proceeding. Specifically, while the litigants have filed exhibits containing a summary of Mr. O'Reilly's assets and liabilities, the record is not fully developed as to whether Mr. O'Reilly had any operations or nontransitory economic activity in the Bahamas as of the date this Chapter 15 proceeding was commenced.

For these reasons, an Order shall be entered that denies the Motion for Recognition. Said denial shall be with prejudice as to the request for recognition of the Bahamian Bankruptcy as a foreign "main" proceeding, and without prejudice to the request for recognition of the Bahamian Bankruptcy as a foreign "nonmain" proceeding.

Date: March 22, 2019

_____
The Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:    Robert E. Dauer, Jr., Esq.
       Keri P. Ebeck, Esq.

FILED
3/22/19 11:20 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

-41-